NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

LINDA S. BOKOR, :
:
            Plaintiff, :   Civil Action No. 10-5880
   v. :
: **OPINION**
COMMISSIONER OF SOCIAL :
SECURITY, :
            Defendant. :
---  :

PISANO, District Judge.

    Before the Court is the appeal of Linda S. Bokor ("Bokor" or "Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and reaches its decision without oral argument. *See* Fed. R. Civ. P. 78. For the reasons set forth herein, the Court finds that the record provides substantial evidence to support the Administrative Law Judge's ("ALJ") decision, and therefore affirms the final decision of the Commissioner.

**I.    PROCEDURAL HISTORY**

    Plaintiff filed an application for DIB on January 5, 2007, alleging that she was disabled due to multiple disc herniations, fibromyalgia, depression, and a left shoulder injury. The SSA denied her claims both initially and on appeal. Upon Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). On August 28, 2009, the ALJ issued a written decision denying Plaintiff's claim. The Appeals Council

subsequently denied Plaintiff's request for review, and the ALJ's decision was thereby rendered the final decision of the Commissioner. On November 11, 2010, Plaintiff filed a complaint in this Court alleging that the Commissioner's decision was not supported by substantial evidence.

## II.    BACKGROUND

Plaintiff was born on February 10, 1964. (Administrative Record ("R") 183). After graduating from college in 1990, she worked from 1995 to 2001 as a clerical/bookkeeper. (R. 20, 113, 115). During her employment, Plaintiff's responsibilities included bookkeeping and payroll as well as answering phones, word processing, and filing. (R. 116). She sat for the majority of the workday, and she was not required to perform any heavy lifting or carrying. (R. 21-22, 116).

In 2001, Plaintiff was involved in a car accident. Following the accident, she had numerous MRIs of her spine performed. Initially, the MRIs indicated mild degenerative disease, small disc bulges at L2-L5, L5-S1, and C5-6, a small left paracentral disc herniation at C6-7, and small disc herniations at T5-6 and T8-9. (R. 305-308). In subsequent MRIs administered in 2003, Plaintiff's results were noted as having remained essentially stable. (R. 297-302). MRIs of Plaintiff's shoulder revealed no evidence of a rotator cuff tear or other injury. (R. 296, 303-304).

From May 2003 through December 2006, Plaintiff saw Dr. Gregory Rihacek, a rheumatologist, every six to eight weeks. (R. 195-212). During her visits in May and April 2003, Plaintiff complained of left shoulder and back pain, and Dr. Rihacek's impressions were cervical and lumbar spondylosis and fibromyalgia. (R. 211-12). During visits in 2004, she also complained of tingling in her left leg, and had multiple

2

percutaneous discectomies. (R. 207-210). In various visits throughout 2005 and 2006, she reported difficulty sleeping and increased back pain (R. 199-206).

In addition to visiting Dr. Rihacek, Plaintiff also visited Dr. Douglas Spiel, a pain management specialist, every four to six weeks beginning in September 2003. (R. 238). At her initial visit, Plaintiff complained of lower back and neck pain, as well as difficulty sleeping. (R. 256-57). As a result, Dr. Spiel administered a number of procedures over the course of the next several months, including percutaneous discectomies, a discography, chemonucleolyses, transforaminal epidurals, and blocks and a radio ablation of various medial branches. (R. 268-93). During this period, Dr. Spiel's leading diagnoses were lumbar radiculitis and lumbar facet syndrome. (R. 268-93).

Over the course of Plaintiff's numerous visits to Dr. Spiel from 2004 through 2007, Plaintiff continued to report lower back pain, left leg pain, and tingling in the left leg. (R. 245-255). She reported the same symptoms during visits with Dr. Spiel from 2007 through 2009, and had numerous procedures performed, including a provocative discography, endoscopic discectomy, annuloplasty, and radiofrequency ablation and blocks of various medial branches (R. 351-76). Plaintiff also reported having begun physical therapy, which she indicated was improving her pain. (R. 363-63). An x-ray and MRI taken of Plaintiff's spine in March 2007 revealed mild lumbar dextroscoliosis. (R. 265). Plaintiff's medical records also indicate that she began visiting Dr. Eric Wininger in 2007 for thyroid problems, and was diagnosed with hypothyroidism and Hashimoto's thyroiditis (R. 310-342).

In a report dated August 1, 2007, Dr. Spiel opined that, based on his medical findings, Plaintiff could stand and/or walk up to six hours per day and sit up to six hours

3

per day, both with breaks. (R. 239). He further indicated that Plaintiff could lift and carry up to ten pounds, had no limitation in her ability to push and/or pull, and had no other conditions that limit her ability to do work-related activities. (R. 239). In a residual functional capacity questionnaire dated August 12, 2009, Dr. Rihacek summarized his treatment of Plaintiff. He opined that she was incapable of even "low stress" jobs because of severe pain and stiffness, and that she was unable to sit, stand, walk, or lift and carry any weight in an eight-hour workday. (R. 379-83).

At her hearing before the ALJ on August 19, 2009, Plaintiff testified that she suffered injuries to her back, neck, hip, and shoulder as a result of her car accident in 2001. (R. 22-23). She summarized the treatment she'd received in the years following her accident, including her visits and procedures with Dr. Spiel and Dr. Rihacek, visits with a chiropractor, and physical therapy. (R. 26-28). She also testified that her medications[1] had remained largely the same since the accident. (R. 27). At the time of the hearing, Plaintiff was still seeing Dr. Spiel and Dr. Rihacek every few months for pain management and treatment for her fibromyalgia. She was also seeing Dr. Wininger for her thyroid problems (R. 33-34).

In addition to the physical injuries she sustained, Plaintiff also testified that she has suffered from depression since shortly after her accident. (R. 28). She indicated that she had gone to a behavior therapist for several months, but stopped going because she didn't find it helpful. (R. 28-29). She has not since been treated by any psychologist, psychiatrist, or other mental health professional, and indicated that the only medication

---

[1] The medications that Plaintiff appears to have been prescribed from 2003 through the date of her hearing include, *inter alia*, Roxycodone, Topomax, Nexium, Opana, Synthroid, Lyrica, Ambien, Xanax, Restoril, Darvocet, Elavil, and Soma. Plaintiff testified that the only side effects she experiences from her medications include fatigue and occasional constipation. (R. 27).

4

she had received for depression was Elavil, which she stopped taking because it made her nauseous. (R. 28).

With regard to the impact her injuries have had on her ability to function, Plaintiff testified that she can sit for about one hour when on pain medications, and that continuous pain in her lower back prevents her from standing for more than fifteen to thirty minutes at a time. (R. 23-24). She occasionally drives, does dishes, goes food shopping, and makes dinner at night. (R. 29-31). She testified that, in a typical day, she spends twenty-two to twenty-three hours in bed.[2] (R. 31).

### III.  STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial" evidence. 42 U.S.C. § 405(g); § 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). For evidence to be deemed "substantial," it must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of this review, the court "must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v.*

---

[2] In the function report completed by Plaintiff on February 2, 2007, she indicated that she could sleep for four to five hours per night, but only two hours at a time. (R. 142). She also stated that, in addition to the activities noted above, she also helped her son get ready in the morning, takes her dog outside, and drives for up to 45 minutes to one hour at a time. (R. 141-147).

5

*Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)). The Commissioner has a corresponding obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Indeed, access to the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nevertheless, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. Establishing Disability

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled for these purposes only if her physical and mental impairments are "of such severity that [s]he is not only unable to do [her]

previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish (1) that she has not engaged in any "substantial gainful activity" since the onset of his alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). The claimant bears the burden of establishing these first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and is therefore not entitled to disability benefits. *Id.* If, on the other

7

hand, the claimant is unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits.  *Yuckert*, 482 U.S. at 146-47 n.5.

### B.  Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.,* a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of [42 U.S.C.] § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms.  *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability.").  She must provide medical findings that show that she has a medically determinable impairment.  *See id.*; *see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment…"); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect… [her] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## IV.   THE ALJ'S DECISION

On August 19, 2009, a video hearing was held before ALJ Brian LeMoine. (R. 9). Plaintiff and her attorney appeared in Bradley Beach, New Jersey, and the ALJ presided over the hearing from White Plains, New York. (R. 9). In a written decision dated August 28, 2009, the ALJ denied Plaintiff's claim for DIB, concluding that she was not disabled from the alleged onset date through the date last insured. (R. 9).

After considering all of the evidence in the record, the ALJ made the initial determination that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006. (R. 13). He then proceeded to the five-step sequential analysis required under 20 C.F.R. § 404.1520. (R. 13). At step one, he found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged

9

onset date, May 7, 2003, through her date last insured, December 31, 2006. (R. 13). At step two, he concluded that Plaintiff had the following severe impairments: disc herniations at C6-7 and L5-S1, cervical/lumbar spondylosis, a history of fibromyalgia, status-post left shoulder impingement, and a thyroid disorder. (R. 13). He further determined that the evidence did not substantiate a medically determinable mental impairment after taking into account Plaintiff's alleged anxiety symptoms and Xanax prescription, and concluding that no evidence was presented demonstrating any mental functional limitations, history of formal mental health treatment, or specific diagnosis. (R. 13).

Proceeding to step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). Specifically, he determined that there was no documentation of significant motor, sensory, or reflex deficits within the context of listing 1.04, which relates to spinal disorders, no indication that Plaintiff was unable to perform fine or gross manipulations as defined in listing 1.02B, and insufficient findings to warrant application of listing 9.02, which relates to thyroid disorders. (R. 13).

Prior to reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Thus, he concluded that she was capable of lifting and carrying objects weighing up to 10 pounds, and could sit for a total of six hours during the course of an eight-hour workday. (R. 13). The ALJ based his assessment on the opinion of Dr. Spiel, Plaintiff's treating pain management specialist, and deemed that opinion to be

consistent with the totality of the objective medical evidence of record. (R. 13). He further concluded that the objective evidence indicated that Plaintiff's clinical findings "have remained essentially stable since the time of her initial injury, which coincides with a timeframe during which she has previously been adjudicated as being non-disabled." (R. 14). Thus, he found that, "while it is not doubted that [Plaintiff] has experienced some degree of discomfort secondary to her condition, there are no objective findings to support an inability to perform at least sedentary work." (R. 14).

In making his finding as to Plaintiff's RFC, the ALJ further noted that he considered all opinion evidence and all symptoms to the extent they could reasonably be accepted as consistent with the evidence in the record. (R. 13). With regard to the opinion evidence, the ALJ accorded significant weight to Dr. Spiel's August 2007 opinion regarding Plaintiff's ability to perform sedentary work. (R. 14). As the basis for doing so, he cited Dr. Spiel's role as Plaintiff's attending medical specialist and the fact that Dr. Spiel's impressions were the most contemporaneous with the relevant date last insured. (R. 14). The ALJ also considered Dr. Rihacek's statements regarding Plaintiff's inability to perform even a nominal range of sedentary work. (R. 14). He did not, however, accord those statements significant weight, and instead labeled them as "conclusory" and "not objectively corroborated by clinical evidence or consistent with [the ALJ's] personal hearing observations" of the Plaintiff. (R. 14-15).

As for the alleged symptoms, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 14). However, he found Plaintiff's statements concerning the intensity, persistence and limiting effects of those alleged symptoms to be "not fully credible to the extent

11

purported." (R. 14). In reaching this determination, the ALJ noted his observations of Plaintiff during the hearing, including his observation that she "displayed no difficulties in ambulating in to or out of the hearing room or while sitting throughout the proceeding," and his review of Plaintiff's earnings records, which he noted reflect a "generally sporadic work history, a factor which does not signify a strong employment motivation and which tends to undermine the claimant's overall credibility." (R. 14).

Having determined Plaintiff's RFC, the ALJ proceeded to step four of the sequential evaluation. (R. 15). At step four, he concluded that Plaintiff was capable of performing past relevant work as a bookkeeper, reasoning that such work is generally performed at the sedentary exertional level—both as defined in the Dictionary of Occupational Titles and by Plaintiff's own description. (R. 15). The ALJ then went on to note that a finding of disabled would not be warranted even if his assessment was not supported by the objective evidence. (R. 15). He referenced Plaintiff's college education, relevant work experience, and younger age, and concluded that, "even assuming that no acquired skills were transferable to other occupations, a finding of 'not disabled' would be rendered in accordance with Medical-Vocational Rules 201.28 and 201.21." (R. 15).

V.     DISCUSSION

Plaintiff raises three issues on appeal.  First, she asserts that the ALJ improperly evaluated the medical evidence by finding that it did not substantiate a severe mental impairment, and by failing to give proper credence and weight to her subjective complaints.  Second, Plaintiff assigns error to the ALJ's determination that she did not meet or equal a listed impairment, specifically Listed Impairment 1.04.  Third, she asserts that the ALJ erred in finding that she had the RFC to perform the full range of sedentary work.

A. The ALJ's Evaluation of the Medical Evidence

**1. Alleged Mental Impairment**

Plaintiff first argues that the ALJ erred by finding that she did not have a severe mental impairment.  Specifically, she states that the record demonstrates that she "has suffered from insomnia for many years, as well as depression, fatigue and anxiety." (Pl.'s Br. 16).

As noted above, the claimant bears the burden of establishing that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. §§ 416.920(b)-(c).  An impairment is not "severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities.  20 C.F.R. § 404.1521(a).  The burden placed on a claimant at step two is not an exacting one, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004), and the step-two inquiry serves as a "*de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  A reviewing court may not, however, apply a

13

more stringent standard of review, and the Commissioner's denial at step two must be upheld if supported by substantial evidence in the record. *McCrea*, 370 F.3d at 360-61.

Here, there is substantial evidence to support the ALJ's determination that Plaintiff does not have a severe mental impairment. Although Plaintiff's treatment records indicate that she complained of difficulty sleeping and anxiety-related symptoms— and was prescribed medication based upon those complaints—there is no record of any diagnosis relating to her mental health. Similarly, other than Plaintiff's testimony at her hearing that she saw a behavioral therapist for a limited period, there is no evidence of any formal mental health treatment. Indeed, Plaintiff also testified at her hearing that she had not otherwise been treated by any psychologist, psychiatrist, or mental health professional, and confirmed in a report dated May 22, 2007 that she had no treatment for depression from 2003 to 2006. (R. 28, 38). Thus, there is substantial evidence to support the ALJ's determination that the record does not substantiate any medically determinable mental impairment.[3]

### 2. Subjective Complaints and Credibility Determination

Plaintiff next asserts that the ALJ failed to properly consider her subjective complaints and allegations of pain. She criticizes the ALJ's credibility determinations, and argues that he failed to consider her medications as support for her allegations of pain.

A plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves

---

[3] The Court further notes that Dr. Rihacek's opinion that Plaintiff cannot tolerate even "low stress" jobs is expressly based upon her pain and stiffness, not any stated mental condition. (R. 380). Thus, Plaintiff's reliance on that opinion is misplaced.

14

constitute disability."). However, where pain or other symptoms are alleged, the ALJ must evaluate the plaintiff's complaints in conjunction with the objective medical and other evidence of record. *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). Similarly, although the ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant," *Brown v. Schweiker,* 562 F.Supp. 284, 287 (E.D. Pa. 1983), if the ALJ concludes that testimony is not credible, he must indicate the basis for that conclusion in his decision. *Cotter v. Harris,* 642 F.2d 700, 705–706 (3d Cir. 1981).

Here, in reaching his decision, the ALJ expressly "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 13). He then explained, by way of specific examples in the record and based upon his observations of Plaintiff during the hearing[4], that although Plaintiff's impairments could be expected to cause the symptoms she alleged, "her statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent purported." (R. 14). For example, he pointed to the largely stable clinical findings in the record and the lack of evidence of any significant neurological deficits or muscle atrophy. (R. 14).

Moreover, despite Plaintiff's argument to the contrary, the ALJ explicitly considered her medications and any purported side effects in reaching his decision. Specifically, he stated that the "treatment records of Drs. Spiel and Rihacek do not allude

---

[4] The Court notes that the ALJ can properly include his observations of Plaintiff at the hearing; in his analysis, he did not rely exclusively on those observations, and instead based his decision and credibility determination on a review of the record as a whole. (R. 13-15); *see Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

to complaints of substantial medication side effects." (R. 14). The record supports this conclusion, as Plaintiff testified at her hearing that the only side effects she experiences from her medications include fatigue and occasional constipation. (R. 27). Accordingly, the Court finds that the ALJ's conclusion concerning Plaintiff's credibility and subjective complaints was reasonable and adequately explained, and is supported by substantial evidence.

### B. The ALJ's Finding at Step Three

Plaintiff next argues that the ALJ erred in concluding that she did not have an impairment or combination of impairments that met or medically equaled one of those listed in the Listing of Impairments. She asserts that the medical record supported a finding that she met listing 1.04, which relates to disorders of the spine.

For a claimant to demonstrate that her impairment matches a listing, "it must meet *all* of the specified criteria." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004)(quoting *Sullivan v. Zebley*, 496 U.S. 521, 530 (1990)(emphasis in original)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* If the ALJ determines that an impairment does not match a listing, he must offer reasoning for his conclusion; he need not, however, "use particular language or adhere to a particular format in the conducting the analysis." *Id.* at 504-05.

Here, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal listing 1.04A. In reaching his conclusion at step three, the ALJ specifically held that "there is no documentation of significant motor, sensory or reflex deficits within the context of medical listing 1.04A."[5]

---

[5] Listing 1.04A, disorders of the spine, requires a showing of: "compromise of a nerve root (including the cauda equina) or the spinal cord," with "[e]vidence of nerve root compression characterized by neuro-

(R. 13). Thus, he justified his conclusion by pointing to the absence of one of the listing's specified criteria. *See Jones*, 364 F.3d at 504. Moreover, later in his opinion, he also noted that there was no evidence of muscle atrophy, and that Plaintiff's gait remained normal with an exhibited ability to perform heel and toe walking maneuvers. (R. 14). Having reviewed the record, the Court finds that substantial evidence supports the ALJ's conclusion.

Notably, Plaintiff fails to identify any evidence of record that contradicts the ALJ's finding at step three. Indeed, the only page she cites in support of a showing of motor loss does not actually mention motor loss or atrophy or otherwise support her assertion. (R. 248). Accordingly, because Plaintiff failed to show that her impairment met all of the specified criteria of listing 1.04A, the Court finds that the ALJ's conclusion at step three is supported by substantial evidence. *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162-163 (3d Cir. 2008); *Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 202-203 (3d Cir. 2008).

### C. The ALJ's RFC Determination

In her final argument on appeal, Plaintiff asserts that the ALJ's finding that she can perform a full range of sedentary work is conclusory and unsupported by the record. When determining an individual's RFC, the ALJ must "consider all evidence before him[,]" including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari,* 247 F.3d 34, 41 (3d.

---

anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

Cir.2001); *see* 20 C.F.R. § 404.1545(a). The ALJ's determination must "be accompanied by a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and, although the ALJ may weigh the credibility of the evidence, "he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121.

Here, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)[6] is supported by substantial evidence. In making his finding, the ALJ properly considered and weighed the evidence before him, including Plaintiff's alleged symptoms. (R. 13-15). In that regard, as detailed above, his credibility determination and analysis of Plaintiff's subjective complaints was reasonable and adequately explained.

Moreover, the ALJ made specific findings as to the opinion evidence included in the record. He expressly accorded significant weight to Dr. Spiel's opinion regarding Plaintiff's ability to perform sedentary work. (R. 13, 14). In that opinion, Dr. Spiel concluded that, based on his medical findings, Plaintiff could stand and/or walk up to six hours per day, sit up to six hours per day, lift and carry up to ten pounds, had no limitation in her ability to push and/or pull, and had no other conditions that limit her ability to do work-related activities. (R. 239). Thus, because that opinion was consistent with the totality of the objective medical evidence of record, and because Dr. Spiel was Plaintiff's attending medical specialist during the relevant period and his August 2007 opinion was the most contemporaneous with the relevant date last insured, the ALJ

---

[6] Sedentary work, as defined in 20 C.F.R. § 404.1567(a), "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

appropriately found that Plaintiff had the RFC to perform the full range of sedentary work. (R. 13-14); *see Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001) (treating physician's opinion is "entitled to substantial and at times even controlling weight"); 20 C.F.R. § 404.1527(d)(2).

Additionally, the ALJ discussed Dr. Rihacek's more recent opinion regarding Plaintiff's inability to work. (R. 14-15). In doing so, he adequately justified his decision to give little credence to the "conclusory statements" contained therein by stating that they were not corroborated by the clinical evidence of record and were inconsistent with his personal observations of Plaintiff at the hearing. (R. 14-15); *see Burnett*, 220 F.3d at 121. Accordingly, the ALJ satisfied his duty to provide "a clear and satisfactory explication of the basis on which" his decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d. Cir. 1981). Thus, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) is supported by substantial evidence.

## VI.    CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff DIB benefits. Therefore, the Court affirms the final decision of the Commissioner. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  January 27, 2012